1998 ME 245

**STATE of Maine**

v.

**Erich PFEIL.**

Supreme Judicial Court of Maine.

Argued Nov. 4, 1998.
Decided Nov. 20, 1998.

574

Geoffrey A. Rushlau, District Attorney, F. Todd Lowell, Asst. Dist. Atty. (orally), Bath, for the State.

Gail Peabody (orally), Orr's Island, for defendant.

Matthew Pollack, Pollack & Quirion, P.A., Topsham, Christopher L. Mann, Bath, for defendant at earlier stages of the proceedings.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

CALKINS, Justice.

[¶ 1] Erich Pfeil appeals from a judgment of conviction entered in the Superior Court (Sagadahoc County, Bradford, J.) on his guilty pleas to gross sexual assault, unlawful sexual contact, and assault. Pfeil contends that he should have been permitted to withdraw his guilty pleas. Because his motion to withdraw the guilty pleas was made after sentence was imposed, we dismiss the appeal. Pfeil was also granted leave to appeal his sentence which he argues is excessive. We affirm the sentence.

## I. Appeal of denial of motion to withdraw pleas

[¶ 2] Erich Pfeil, age 46, acknowledges that he is a pedophile. He was indicted on 25 counts of gross sexual assault, unlawful sexual contact, and assault. Pfeil reached a plea agreement with the State. In exchange for pleas of guilty to three counts of gross sexual assault, four counts of unlawful sexual contact, and two counts of assault, the State recommended a sentence of fifteen years imprisonment, all but ten years suspended, and six years of probation. Pursuant to the agreement the State would dismiss the remaining counts of the indictment and Pfeil was free to argue for a lesser sentence. Following the Rule 11 proceeding, a presentence report was ordered, and the sentencing was continued.

[¶ 3] A sentencing hearing was held on February 27, 1998. The court heard from the State and one of the victims, as well as Pfeil and Pfeil's attorney. Both the State and Pfeil's counsel noted that the presentence report recommended a sentence of four years, suspending all but 273 days, which was the number of days that Pfeil had been incarcerated pending his sentencing. The presentence report also recommended a sentencing scheme involving consecutive suspended sentences for some of the counts so that a probationary period of eighteen years could be imposed. Pfeil's counsel told the court that Pfeil would agree to a longer period of probation than the State had recommended in the plea agreement. The court imposed a sentence totalling thirty-six years imprisonment with all but seven years suspended, and eighteen years of probation. At a sidebar conference counsel and the judge discussed giving the defendant an opportunity to withdraw his plea because the sentence exceeded the agreement. Defense counsel offered to speak to Pfeil and thereafter told the court that the sentence was acceptable. The court then asked Pfeil directly if he agreed to the terms of the sentence even though it exceeded the agreement, and Pfeil answered, "Yes, I do, your honor."

[¶ 4] On its own motion pursuant to M.R.Crim. P. 35(a), the court held a resentencing hearing approximately two weeks later. The judge stated that because the sentences as imposed were contrary to the plea agreement he intended to restructure the sentences so that Pfeil would not face more than a total of fifteen years imprisonment. The State then recommended sentences that would total fifteen years, suspending all but seven years with fourteen years of probation. Defense counsel stated that any sentence greater than the original recommendation of

the State would violate the plea agreement. The court imposed sentences on the nine counts which totalled fifteen years imprisonment, all but seven years suspended, and ten years probation.[1] Pfeil then moved to withdraw his pleas on the ground that the sentences exceeded the plea agreement, and the court denied the motion.

[¶ 5] M.R.Crim. P. 32(d) provides that "A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed." We have held that under the plain language of the rule, a motion to withdraw made after sentencing should be dismissed by the trial court without reaching the merits.[2] *See State v. Cardosi*, 498 A.2d 599, 600–01 (Me.1985). If the court had granted the untimely motion, its action would have been "ineffective," *State v. Loftus*, 631 A.2d 903, 904 (Me.1993), and "a nullity," *Cardosi*, 498 A.2d at 601. A defendant's "sole remedy" after sentencing is post-conviction review. *Id.* at 600; *see also Shorette v. State*, 402 A.2d 450, 460 (Me.1979).

[¶ 6] Pfeil contends that his motion to withdraw his pleas was not pursuant to Rule 32 but rather to Rule 11A. Regardless of the grounds for the motion to withdraw a plea, however, Rule 32(d) governs the timing of the motion.

[¶ 7] The reason that post-conviction review is appropriate and that an adequate review cannot be held on direct appeal is amply illustrated in this case. Pfeil's basis for his motion to withdraw his plea is that his rights under Rule 11A were violated. He argues that the judge did not comply with Rule 11A during the second sentencing hearing because the judge did not inform Pfeil that he intended to impose a less favorable sentence and did not give Pfeil an opportunity to withdraw his pleas before the resentence was imposed.[3] *See Shorette v. State*, 402 A.2d at 460. The significant issue, however, is not whether the court complied with the rule, but whether Pfeil's pleas were made knowingly and voluntarily.[4] If Pfeil's claim is that his waiver of trial and his pleas were not made knowingly and voluntarily because the plea agreement led him to expect a lesser sentence than what was imposed, an evidentiary hearing is necessary to develop a record from which a court can determine whether the pleas were made knowingly and voluntarily.

[¶ 8] From the transcript of the first sentencing, it appears that Pfeil had an off-the-record discussion with his attorney before agreeing to accept the sentence. Whether such a discussion actually occurred, how long it lasted, and what was said cannot be ascertained from this record. Pfeil suggests that any waiver he made to the imposition of a harsher sentence was not knowing and voluntary because of his cognitive difficulties and

1. The court imposed concurrent sentences of twelve years imprisonment, all but seven years suspended, and six years probation on the gross sexual assaults; sentences of three years all suspended plus four years probation for the unlawful sexual contacts, concurrent to each other but consecutive to the gross sexual assault sentences; and sentences of eleven months all suspended and one year probation on the assaults, concurrent to each other and to the other sentences.

2. This interpretation is supported by the history of Rule 32(d), which until 1971 allowed a defendant to make a motion to withdraw a plea after sentencing "to correct manifest injustice;" that option was removed because it was confusing and unnecessarily duplicative of the remedy available in post-conviction review. *See* M.R.Crim. P. 32(d) advisory committee's note to 1971 amend., 1 Cluchey & Seitzinger, Maine Criminal Practice, VI–6 to VI–7 (1995). "The effect of the [1971 amendment] is to leave the defendant who wishes to challenge a plea of guilty ... after imposition of sentence with the remedy of post-conviction review." 1 Cluchey & Seitzinger § 32.8 at VI–23.

3. The only aspect of the new sentence that was less favorable to Pfeil than the recommended sentence was that the probation imposed was for a period of ten years, instead of the six years that the State recommended. The unsuspended portion of the incarceration portion of the sentence was more favorable to the defendant than that recommended by the State—that is, seven years as opposed to the recommended ten years. Furthermore, the judge knew that, at the first sentencing proceeding, Pfeil's counsel had expressed agreement with a longer period of probation and Pfeil had stated that he did not wish to withdraw his plea even in light of a much harsher sentence than was ultimately imposed.

4. We have never required strict compliance with M.R.Crim. P. 11 in order to uphold a guilty plea. See *State v. Andrews*, 624 A.2d 1235, 1236 (Me. 1993).

the presence of television cameras at the first hearing. The present record does not permit a finding that Pfeil's waiver of his right to withdraw his plea was not voluntary. Post-conviction review is the appropriate procedural vehicle to address the issue.

## II. Sentence appeal

[¶ 9] Pfeil appeals his sentence pursuant to 15 M.R.S.A. § 2151 (Supp.1997). He challenges the suspended and unsuspended imprisonment portions of his sentences on the three counts of gross sexual assault and four counts of unlawful sexual contact. He does not challenge the assault sentences.

[¶ 10] The facts before the sentencing judge were that Pfeil undertook various activities that would bring him close to children. He befriended the three victims in this case, "recruiting" them and "grooming" them to be victimized, and exposed them to pornography and explicit sexual discussions. He promised to make "Indian suits" for two of the victims, inducing them to remove their clothes so he could measure them.

[¶ 11] Pfeil molested the victim of the three gross sexual assaults and one unlawful sexual contact by fondling the boy's anus and genitals and touching his penis with a piece of leather.[5] The victim was twelve and thirteen years old at the time of the abuse, which took place on multiple occasions between February and May, 1997. A second boy, age ten, was the victim of two unlawful sexual contacts and one assault. Pfeil had him undress to be measured on multiple occasions between January and March 1997, and touched his penis with a measuring tape and a piece of felt. Pfeil committed assault against the third boy, an eleven-year-old, in April 1997, by tickling him after being told to stop and grabbing him near his genitals.

[¶ 12] Pfeil had no criminal record. The sentencing judge had two written evaluations, one from a psychologist and the other from a psychiatrist, who had examined Pfeil. The various diagnoses included pedophilia, obsessive-compulsive disorder, and Klinefelter's Syndrome. Both evaluations concluded

that Pfeil was a good candidate for sex offender treatment.

[¶ 13] In imposing the sentence at the first sentencing hearing, the court utilized the three-step procedure established in *State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993), and codified at 17–A M.R.S.A. § 1252–C (Supp.1997). The court did not change its *Hewey* analysis at the second sentencing hearing, but reduced the underlying sentence by making concurrent some of the sentences which it had originally made consecutive.

[¶ 14] In the first step of the *Hewey* analysis, the court determines the "basic term of imprisonment by considering the particular nature and seriousness of the offense as committed by the offender," *id.* § 1252–C(1), judging it on a scale of seriousness against all possible ways of committing the crime. See *State v. Lilley*, 624 A.2d 935, 936 (Me.1993). The Law Court reviews the determination of the basic period for misapplication of principle. *Hewey*, 622 A.2d at 1155.

[¶ 15] For the three gross sexual assaults, the court found the basic period to be within a range of ten to fifteen years. Pfeil argues that the court impermissibly considered the fact that there were multiple offenses. The multiplicity of the offenses is not an impermissible factor. That Pfeil carefully selected his child victim, "groomed" him to be abused, developed a friendship with him over a period of months, and then betrayed that friendship by a series of sexual assaults, is a consideration of the particular nature and seriousness of the offenses and not of Pfeil's criminal history.

[¶ 16] Pfeil also argues that the court should not have considered the effect on the victim in arriving at the basic sentence. Although the "subjective" effect on the victim is not properly considered in the first step, "objective" facts regarding the victim are appropriate. See § 1252–C(2); *State v. Shulikov*, 1998 ME 111, ¶ 23, 712 A.2d 504, 511. The court could have correctly consid-

---

**5.** The piece of leather qualifies as "an instrument or device," making the act a "sexual act" as defined in 17–A M.R.S.A. § 251(C)(3) (Supp.

1997) and the offense gross sexual assault. *See* 17–A M.R.S.A. § 253(1) (Supp. 1997).

ered the objective fact that the victim was a young boy who had his whole life in front of him to be affected by Pfeil's crimes.

■ [¶ 17] Pfeil committed three gross sexual assaults on a child. Because there was no violence and no penetration, Pfeil's conduct cannot be considered among the most serious ways of committing gross sexual assault, but neither can it be minimized consistent with the court's statutory duty to impose sentences that "do not diminish the gravity of offenses, with reference to ... [t]he age of the victim." 17–A M.R.S.A. § 1151(8) (Supp.1997). Furthermore, the sentencing court had before it substantial information regarding sentences that had been imposed in other cases involving sexual offenses against children.[6] The court did not misapply principle in selecting a ten to fifteen year range as the basic period of incarceration for the gross sexual assaults.[7]

■ [¶ 18] In the next step, the court considered the aggravating and mitigating factors and determined a maximum period of incarceration of twelve years for the gross sexual assaults and three years for the unlawful sexual contacts. This Court reviews that determination for abuse of discretion. *See State v. Corrieri,* 654 A.2d 419, 423 (Me. 1995). The sentencing court considered a number of aggravating factors, including Pfeil's "grooming" behavior by which he recruited his victims, his pedophilia, the terrible impact of his crimes on the victims, and the need to protect the public. It also considered mitigating factors, including Pfeil's remorse, his lack of criminal history, his physical and mental problems, and the opinion of the two evaluators that his pedophilia is treatable, although the court noted some skepticism regarding the latter. Keeping in mind the sentencing court's "superior position for evaluating evidence of the circumstances of the offender," *Hewey,* 622 A.2d at 1155, its determination that the aggravating and mitigating factors were roughly equal in weight, justifying maximum sentences of twelve years for the gross sexual assaults and three years for the unlawful sexual contacts, was not an abuse of discretion.[8]

■ [¶ 19] In the final step of the *Hewey* procedure, the court suspended all of the unlawful sexual contact sentences and all but seven years of the gross sexual assault sentences. That step also involves weighing the aggravating and mitigating factors and is reviewed for abuse of discretion. *See Corrieri,* 654 A.2d at 423. Pfeil argues that the court gave insufficient weight to his prospects for rehabilitation. "[T]he need to protect the public," however, is also a factor to be considered in determining how much of the sentence to suspend. *See State v. Coreau,* 651 A.2d 319, 320 (Me.1994). The court was entitled to weigh the unknown effects of future treatment and rehabilitation against the known fact that Pfeil is a pedophile who acted upon his sexual attraction to children. The court did not abuse its discretion by suspending five years of the twelve-year maximum sentence.

The entry is:

Appeal from denial of motion to withdraw plea dismissed. Sentences affirmed.

---

**6.** We recently upheld a sentence of fourteen years for multiple gross sexual assaults on a child in which the basic sentence of nine years was increased to arrive at the maximum sentence because of the defendant's criminal record. *See State v. Lewis,* 1998 ME 83, ¶¶ 8, 9, 711 A.2d 119, 123–24.

**7.** For the offenses of unlawful sexual contact, the court set a basic period of two and a half to four years. Pfeil's only challenge to that determination is a protest that it is excessive without identifying any misapplication of principle. The unlawful sexual contacts consisted of repeated fondling of young boys. Two and a half to four years is not excessive. *Cf. Lewis,* 1998 ME 83, ¶ 8 n. 6, 711 A.2d at 123 n. 6 (four year basic sentence for unlawful sexual contact).

**8.** Pfeil also argues that the court erred in failing to consider the impact of the new good time deduction statute, as required by 17–A M.R.S.A. § 1252–B (Supp. 1997). There is nothing in the record to indicate that the court either took the good time law into consideration or failed to do so. Pfeil's argument is based on speculation.