2009 ME 3

**STATE of Maine**

v.

**Eugene DOWNS.**

Supreme Judicial Court of Maine.

Argued: Oct. 28, 2008.

Decided: Jan. 13, 2009.

---

Evert Fowle, District Attorney, James G. Mitchell, Asst. Dist. Atty., (orally), Prosecutorial District IV, Skowhegan, ME, for the State of Maine.

Arnold Clark, Esq., (orally), Jabar, Batten & Ringer, Waterville, ME, for Eugene Downs.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

Dissent: SILVER, J.

LEVY, J.

[¶ 1] Eugene Downs appeals the sentence imposed by the Superior Court (Somerset County, *Mills, J.*) contending that the court erred in applying the three steps of the *Hewey* sentencing analysis codified at 17–A M.R.S. § 1252–C (2008), that the court erred in imposing consecutive sentences, and that his overall sentence is excessive. We affirm the sentence imposed by the Superior Court and clarify how the *Hewey* sentencing analysis should be applied in sentencing multiple crimes arising from a crime spree.

## I.  BACKGROUND

[¶ 2] This is the second time Downs has appealed his sentence. We vacated his first sentence and remanded it for resentencing. *State v. Downs,* 2007 ME 41, 916 A.2d 210 (*Downs I* ).

### A.  Downs's Crimes and Initial Sentence

[¶ 3] Between September 2002 and January 2004, Downs committed thirty-eight burglaries with the help of at least one other individual. Each burglary involved an accompanying theft. The burglaries affected thirty-one different victims, including fifteen businesses and sixteen unoccupied seasonal camps. Downs burglarized several victims multiple times, and he knew several of the victims because they had previously employed him. The burglaries and thefts varied in severity. On some occasions, Downs pried open doors and took only items such as flashlights and tools. On other occasions he significantly damaged buildings, ransacked their interiors, and stole firearms.

[¶ 4] Prior to September 2002, Downs had no criminal record. He began committing burglaries at the same time that he began to abuse drugs and alcohol. In fact, Downs was intoxicated during every burglary. Downs's other motives included inflicting "payback" and breaking in simply to have "something to do."

[¶ 5] Downs, who was twenty-three years old when he began his burglaries, did not complete high school, leaving after the eleventh grade. At one time he ran a small engine repair business, and he also worked for short periods at various manufacturing and lumber companies. Downs suffers from an anxiety disorder that he alleges interferes with his ability to maintain employment.

[¶ 6] Downs was indicted on seventy-six counts of burglary and theft.[1] He sub-

1. The indictment was for sixteen counts of      burglary of a residence (Class B), twenty-one

sequently pleaded guilty to all charges with no agreement from the District Attorney's office or from the court as to a likely sentence. At the conclusion of Downs's sentencing hearing, the court selected three counts and performed a *Hewey* sentencing analysis as to each. *See State v. Hewey*, 622 A.2d 1151 (Me.1993). The resulting aggregate sentence was as follows: (1) Count 3, Class B burglary, ten years with all but six years suspended and four years of probation; (2) Count 11, Class B burglary, ten years all suspended with four years of probation, to be served consecutively to Count 3; (3) Count 40, Class B theft, ten years all suspended with four years of probation, to be served consecutively to Count 11. The remaining seventy-three counts, which did not receive individual *Hewey* analyses, all ran concurrently. Under this sentence, Downs would serve six years (reduced by good time credits if he behaved in prison), and he would be on probation for twelve years. In addition, the court ordered Downs to pay $57,173 in restitution within the first eleven years of probation.

## B. *Downs I*

[¶ 7] On Downs's appeal of his original sentence, we stated that the *Hewey* sentencing analysis applies "whether the court is sentencing a defendant for a single offense, several offenses or, as here, for multiple crimes as part of a crime spree." *Downs I*, 2007 ME 41, ¶ 6, 916 A.2d at 212. We therefore confirmed that, in the first stage of the *Hewey* analysis, the sentencing court is to consider the "particular nature and seriousness of the offense as committed by the offender." *Id.* (quotation marks omitted); 17-A M.R.S. § 1252-C(1); *see Hewey*, 622 A.2d at 1154.

[¶ 8] We observed that in the first stage analysis of the basic sentence for the three primary burglary counts, the sentencing court considered, among other things, that Downs had committed a total of seventy-six counts of burglary and theft as a rationale for arriving at a ten-year basic sentence, the maximum possible. *Downs I*, 2007 ME 41, ¶ 9, 916 A.2d at 213. The sentencing court's first stage analysis did not focus on the "manner in which Downs committed the Class B burglaries and thefts." *Id.* ¶ 11, 916 A.2d at 213. We identified two errors with this approach.

[¶ 9] First, we found that the "nature and seriousness of Downs's Class B burglary and theft offenses (Counts 3, 11, and 40, the counts selected by the court as controlling sentences) [did] not justify the imposition of the maximum basic sentence." *Id.* Second, we concluded that the court erred when it considered the total number of burglaries and thefts as relevant to the first stage of the *Hewey* analysis. *Id.* ¶ 12, 916 A.2d at 213. "In a case involving multiple offenses ... it would be appropriate ... for the court to choose a representative or primary offense for analysis in the first step of the *Hewey* process." *Id.* ¶ 12, 916 A.2d at 213–14. However, we emphasized that "[t]he fact that an offender has committed multiple offenses is to be considered in the second step ... [as] an aggravating factor." *Id.* ¶ 12, 916 A.2d at 214. We did note that a multiplicity of offenses could be relevant in the first stage if it "bears on the degree of planning undertaken to commit the crime," citing *State v. Pfeil*, 1998 ME 245, ¶ 15, 720 A.2d 573, 577. *Id.*

[¶ 10] On remand, both the State and Downs submitted sentencing memoranda. The State recommended a sentence of

counts of burglary of a structure (Class C), one count of burglary of a motor vehicle (Class C), two counts of theft of a firearm (Class B), nine counts of theft (Class C), seven counts of theft (Class D), and twenty counts of theft (Class E).

thirty years with all but six years suspended and twelve years of probation. Downs recommended a sentence of ten and a half years with all but three years suspended and eight years of probation. Both proposed in their memoranda that the court establish an aggregate sentence by using selected representative counts. The State urged the court to divide the crime spree into four episodes, select the most serious burglary from each episode, and tailor a *Hewey* analysis as to each of the four counts. Downs proposed that the court select the most serious Class B burglary, Class C burglary, and Class B theft, and tailor a *Hewey* analysis as to each of the three counts.

[¶ 11] The court did not adopt either of the aggregate sentencing approaches proposed by Downs or the State. Instead, the court conducted a separate *Hewey* analysis for each of the seventy-six counts and arrived at a sentence imposing an identical period of incarceration and probation as the previous sentence. The court's new sentence was as follows: (1) Counts 59 and 60, Class B burglary and Class B theft, ten years with all but six years suspended and four years of probation, to be served concurrently; (2) Count 65, Class B burglary, ten years all suspended with four years of probation, to be served consecutively to Counts 59 and 60; (3) Count 75, Class B burglary, ten years all suspended with four years of probation, to be served consecutively to Count 65. The court sentenced the remaining seventy-two counts to run concurrently. As with the original sentence, Downs will serve six years (reduced by good time credits if he behaves in prison) and will be on probation for twelve years. In addition, the court lowered the amount of restitution to $11,400 based on the lack of record support for the previous amount.

## II. DISCUSSION

### A. Applicability of the *Hewey* Sentencing Analysis to Multiple Crimes

[¶ 12] At the outset, we address the question of whether our decision in *Downs I* was intended to require courts, in cases involving numerous counts, to undertake an individual *Hewey* analysis as to each count.

[¶ 13] As noted above, on remand, both the State and Downs proposed aggregate sentences based on a few selected counts that were deemed representative of the rest or among the most serious offenses. The trial court, however, interpreted our decision in *Downs I* to mean that, when confronted with the task of sentencing multiple crimes, courts should "[go] through every count" and perform a "count by count analysis." The trial court's interpretation of *Downs I* is consistent with the interpretation advanced in the dissenting opinions in *Downs I. See also* Matthew E. Lane, *Thinking Inside the Box: Placing Form over Function in the Application of the Statutory Sentencing Procedure in State of Maine v. Eugene Downs,* 60 Me. L.Rev. 587 (2008). Because *Downs I* can be read to require an individual *Hewey* analysis as to every count, we take this opportunity to clarify it.

[¶ 14] When sentencing an offender for a crime spree, the sentencing court is ultimately charged with the overall responsibility to craft a cohesive aggregate sentence for the offender. To accomplish this task in a case involving numerous counts, the court has the discretion to construct an aggregate sentence using a few of the most serious or representative counts (the "primary counts") as its foundation. As to those counts, the court must engage in separate *Hewey* analyses, and must also perform the analysis required by

17–A M.R.S. § 1256 (2008) if the court wishes to consider consecutive sentences. As to the remaining counts, the court need not engage in separate *Hewey* analyses so long as the sentences for those counts will run concurrent with one or more of the primary counts.

### B. Alleged Errors

[¶ 15] Downs presents four primary arguments on appeal. We address each of them in turn.

#### 1. The Basic Sentence for Count 65

[¶ 16] First, Downs argues that the court erred in setting the basic sentence for Count 65 when it considered that this was the second burglary of the same victim. He contends that this amounted to a consideration of prior offenses at the first *Hewey* stage and that the court consequently failed to restrict its analysis to the nature and seriousness of the burglary.

[¶ 17] In the first step of the *Hewey* analysis, the court must set the basic sentence by "considering the particular nature and seriousness of the offense as committed by the offender." 17–A M.R.S. § 1252–C(1). We review a sentencing court's determination of the basic sentence for misapplication of principle. *Hewey*, 622 A.2d at 1155.

[¶ 18] Here, the court considered that Count 65 involved a second victimization of a single victim in both stage one and two of the *Hewey* analysis. However, for reasons that will be discussed below, the court did not misapply principle in setting the basic sentence for Count 65. The court emphasized that in the first stage of the *Hewey* analysis, it was only considering the nature and seriousness of the particular offense being sentenced and that it was considering the multiplicity of crimes as an aggravating factor in step two. For Count 65 in particular, the court set the basic sentence at five years, and, in the court's

words, "increase[d it] in stage two to ten years" because it was the second burglary by Downs committed against the victim. As we noted in *Downs I*, the multiplicity of crimes is an appropriate aggravating factor to be considered in stage two of the *Hewey* analysis. Therefore, the court's consideration that Count 65 involved the re-victimization of the victim was not in error because the court properly viewed it as an aggravating factor relevant to stage two.

[¶ 19] Furthermore, the court's analysis of Count 65 is consistent with its treatment of the other primary counts. For Count 59, for example, the court increased the basic sentence of five years to ten years at stage two based on "the fact that 58 crimes have been committed by the time [the victim's] camp was broken into." For Count 75, the court increased the basic sentence from four years to ten years at stage two because "74 crimes have been committed by the time [the victim's] camp was entered."

[¶ 20] Downs points out that later in its analysis, the court stated that because Count 65 involved a second victimization, that fact should "be taken into consideration in stage one." The court explained that it was also relevant at that stage "not because it is a second crime, but because it shows ... motive," comparing it to a situation where an offender "assault[s] the same victim three or four times." The multiplicity of an offender's crimes may be considered in stage one if it is relevant to the degree of planning or forethought undertaken to commit the crime or otherwise bears on the nature and seriousness of the crime. *See Downs I*, 2007 ME 41, ¶ 12, 916 A.2d at 214; *Pfeil*, 1998 ME 245, ¶ 15, 720 A.2d at 577. The court's conclusion that the burglary in Count 65 was motivated by a desire to re-offend against an earlier victim was relevant to assessing the

956

nature and seriousness of the offense at stage one.

2. The Maximum Sentences for Counts 59, 65, and 75

[¶ 21] Downs argues that the court abused its discretion in setting the maximum sentences for Counts 59, 65, and 75. He contends that the court weighed the aggravating and mitigating factors disproportionately and that it arbitrarily imposed ten-year sentences on the three primary counts with the intent of sentencing them consecutively.

[¶ 22] In the second step of the *Hewey* analysis, a court must determine the maximum sentence by "considering all other relevant sentencing factors, both aggravating and mitigating." 17–A M.R.S. § 1252–C(2). We review a sentencing court's determination of the maximum sentence for an abuse of discretion. *State v. Sweet*, 2000 ME 14, ¶ 15, 745 A.2d 368, 373.

[¶ 23] Before it began its *Hewey* analysis of each count, the court summarized the aggravating and mitigating factors. The court noted that in the first sentencing proceeding, it had determined that the aggravating and mitigating factors were equal because it had considered the total number of crimes when setting the basic sentence in stage one. Acknowledging that it was now considering the total number of crimes in step two, the court found that the aggravating factors "substantially outweigh[ed]" the mitigating factors. The court then indicated that the total number of crimes would become an increasingly aggravating factor as the counts increased. The essence of Downs's argument is that, despite the court's assertion, the court "arbitrarily" increased the sentences for the primary offenses to the maximum allowable, while giving lower maximum sentences to other late stage burglaries. We disagree for the following reasons.

[¶ 24] First, the court appropriately considered the cumulative effect of the burglaries as an aggravating factor relevant to stage two. Accordingly, and as noted above, the court provided reasons for increasing the basic sentences of Counts 59, 65, and 75 that were all appropriate to the stage two analysis. Second, even though the court indicated that the cumulative effect of the burglaries would become an increasingly aggravating factor as the counts increased, the court was not compelled, as a matter of the exercise of its sentencing discretion, to give every late stage burglary a higher maximum sentence than those that preceded it. To conclude otherwise would unnecessarily restrict a court's ability to craft an aggregate sentence that is individualized to the offender and the offender's crimes.

3. The Final Sentences for Counts 59, 65, and 75

[¶ 25] Downs argues that the court abused its discretion in determining the suspended portion of the sentence at stage three. He contends that the court failed to individualize his sentence and placed too much emphasis on giving "fair warning" to others.

[¶ 26] In the third step of the *Hewey* analysis, a court must determine what portion of the maximum sentence should be suspended and what period of probation should accompany that suspension. 17–A M.R.S. § 1252–C(3). We review a sentencing court's determination of the suspended sentence for an abuse of discretion. *Sweet*, 2000 ME 14, ¶ 15, 745 A.2d at 373.

[¶ 27] The court did not abuse its discretion in determining the suspended portion of the sentence. Although the court specifically mentioned giving "fair warning" to others as a basis for the sentences, the court also expressed its intent to en-

courage restitution, promote rehabilitation, protect the public, and keep Downs out of the criminal justice system. These sentencing purposes are all proper pursuant to 17–A M.R.S. § 1151 (2008).

4. Consecutive Sentences

[¶ 28] Finally, Downs argues that the court abused its discretion by imposing consecutive sentences on the three primary burglaries that received ten-year sentences in order to implement the same sentence we vacated in *Downs I*. He also contends that his sentence is excessive.

[¶ 29] A sentencing court must impose sentences concurrently unless it finds a statutory basis for imposing the sentences consecutively. 17–A M.R.S. § 1256. We review a sentencing court's imposition of consecutive sentences for an abuse of discretion. *Sweet*, 2000 ME 14, ¶ 19, 745 A.2d at 374. We also review a court's determination of the overall sentence for an abuse of discretion. *Id.* ¶ 22, 745 A.2d at 375.

[¶ 30] Contrary to Downs's assertions, the court acted within its discretion in imposing consecutive sentences. The court relied specifically on sections 1256(2)(A) and (D). First, it found consecutive sentences were justified because each burglary was a "different criminal episode" involving different criminal conduct. Second, it determined that consecutive sentences were warranted because of the "seriousness of the criminal conduct involved in multiple criminal episodes." Given that the extent of Downs's crimes involved thirty-eight separate burglaries over the course of sixteen months, the court did not abuse its discretion in imposing consecutive sentences pursuant to section 1256.

[¶ 31] Nor did the court err by imposing a sentence having the same period of incarceration and probation as the sentence we vacated in *Downs I*. The ultimate question presented in this sentence appeal is whether the court's sentence, following remand, violated principle or exceeded the court's discretion. Because it did neither, and because nothing in *Downs I* required the court to impose a lesser overall sentence, the court did not err by imposing the identical sentence.

[¶ 32] The court also did not abuse its discretion in determining the overall sentence or impose an unlawfully excessive sentence.[2] The court indicated that the length of the probationary period was to protect the public and rehabilitate Downs, and that a four-year probation would be insufficient to achieve those ends. Although, as suggested by both counsel at oral argument, lengthy periods of probation may subject some younger offenders to successive periods of incarceration imposed, in effect, "on an installment plan," all at great expense to Maine's corrections system, such sentences are authorized by statute. Here, the court received evidence that Downs had begun to control his substance abuse and emotional problems, and concluded that a lengthy period of probation was required to ensure that Downs remained drug free, emotionally balanced, and properly supervised. The lengthy period of probation ordered was within the court's discretion because Downs's crimes were committed to support a drug habit, he had previously had the opportunity to receive treatment for his problems, and his substance abuse resulted in an extensive crime spree that harmed numerous victims.

2. Downs does not claim that his overall sentence is disproportionate under article I, section 9, of the Maine Constitution, which provides that "all penalties and punishments shall be proportioned to the offense." Me. Const. art I, § 9.

The entry is:

Sentence affirmed.

SILVER, J., dissenting.

[¶ 33] I respectfully dissent. Any way you analyze this sentence, it is too long. Eugene Downs was a twenty-three-year-old addicted to alcohol and drugs at the time he committed these crimes. Although Downs's crime spree deprived many good citizens of their property and caused financial loss, these crimes are not in the extreme category that would justify the underlying thirty-year sentence. This Court's prior decisions and public policy require a much shorter sentence, and we should reserve thirty-year sentences for the most extreme misbehavior.

[¶ 34] Downs burglarized camps and businesses—some of them more than once—and he stole items from the places he burglarized. When caught, Downs cooperated with the police and led them to various crime scenes. He pled guilty to all of the crimes.

[¶ 35] Downs left high school after the eleventh grade. He has worked sporadically, and he lived with his mother at the time of sentencing. Downs is able to do some automotive repair work, but he suffers from an anxiety disorder that inhibits his work ability. He is now on medication that helps with the anxiety. Most importantly, Downs had no prior criminal record before this series of crimes.

[¶ 36] The trial judge imposed consecutive sentences totaling thirty years, along with twelve years of probation and restitution of $11,400. The trial judge suspended all but six years of the sentence.

## I. SENTENCING GOALS

[¶ 37] The Legislature requires the courts to minimize the correctional experience. *See* 17–A M.R.S. § 1151(3). The likelihood that a drug and alcohol addict will make some error in judgment that violates his probation is very high, and we see far too many of these cases in the court system. These "missteps" are not necessarily criminal behavior, but they may be a violation of probation. Because the terms of Downs's twelve-year probation period will require him to refrain from any alcohol or drugs of any kind, his thirty-year sentence is much more likely to amount to an "installment plan," where probation is revoked and the suspended portions of the sentence are reinstated.

[¶ 38] This Court is charged with "promot[ing] the development and application of criteria for sentencing which are both rational and just." 15 M.R.S. § 2154(4) (2008). Article I, section 9 of the Maine Constitution declares, "all penalties and punishments shall be proportioned to the offense." In *State v. Lilley*, 624 A.2d 935 (Me.1993), we found a split sentence that was severely disproportionate to the crimes to be an error in principle. In that case a woman was sentenced to ten years with all but nine months and one day suspended, for one class B drug offense. *Id.* at 936. We also spoke in *State v. Frechette*, 645 A.2d 1128 (Me.1994), about the use of excessive consecutive sentences. In that case a man was sentenced to eighty years in prison for multiple sex offenses on a seven-year-old girl. *Id.* at 1129. "The net effect of Frechette's sentences is eight years of incarceration, followed by twenty-four years of probation with an additional seventy-two years of potential incarceration." *Id.* We declared Frechette's sentence too long and sent the matter back for resentencing. *Id.* at 1129–30. In another case, this Court declared that a forty-year sentence for a series of arsons was excessive. *State v. Cloutier*, 646 A.2d 358 (Me.1994), *overruled on other grounds by State v. Berube*, 1997 ME 165, ¶ 19, 698 A.2d 509, 516.

[¶ 39]  The sentence imposed on Downs is more appropriate for a violent crime such as murder, manslaughter, robbery, or rape.  These crimes are punishable by up to thirty years.  We need to reserve lengthy prison sentences for those who are violent.  As a society, we cannot afford to send young nonviolent offenders into the prison system, where there is a greater risk that they will learn better skills as a criminal and will not be rehabilitated.

[¶ 40]  Furthermore, this sentence is not cost effective because the court is sending a twenty-four-year old to prison for up to thirty years and requiring a restrictive probation for twelve years.  The cost to the state is enormous in supervising and institutionalizing this young man.  The Legislature has already recognized that incarceration often breeds criminality.  The sentence is not just and is too expensive for the citizens of Maine to bear.  There is a strong likelihood that Downs will spend too much time in the system.

[¶ 41]  I would vacate this sentence and remand for resentencing.