STATE OF MAINE                  SUPERIOR COURT
WASHINGTON, ss                DOCKET NO.: MACSC-CR-2012-76

STATE OF MAINE

v.                                  **SENTENCING ORDER**

FORREST SAPIEL

         Defendant

         This matter is before the Court for sentencing following Forrest Sapiel's plea of guilty and conviction on nineteen counts of possession of sexually explicit materials (Class C), 17-A M.R.S. § 284(1)(C) (2012). The elements of the charge relevant to Sapiel's case are that he possessed on his computer images of persons, under the age of twelve years, engaging in sexually explicit conduct and that Sapiel knew or had reason to know that the person or persons depicted in the images were under twelve years of age.

         Based on his plea, Sapiel has been convicted of nineteen counts of possession of sexually explicit material out of twenty-four counts stated in an indictment returned by the Washington County grand jury on March 11, 2013. The pleas were entered on Counts 3 through 11, and 14 through 23. All of the counts of the indictment are based on images found on Sapiel's personal computer that was seized from his home on April 26, 2012. All counts are identically worded

except for reference to the electronic file number of the video depiction of young children engaging in sexually explicit conduct identified in each count.

According to information provided at the Rule 11 plea proceeding on July 24, 2013, Sapiel's computer came to the attention of the prosecution as a result of information conveyed from a national computer traffic-monitoring source to the Maine State Police. That information indicated that there appeared to be a large amount of traffic from a file sharing program or network known to transmit images depicting children engaging in sexually explicit conduct to a computer address ultimately identified as belonging to Sapiel.[1] The images possessed by Sapiel were apparently made available for download, without cost, to anyone who accessed the file sharing program or network.

There is no indication that Sapiel played any role in creating the child pornography images, *compare State v. Bailey*, 2012 ME 55, 41 A.3d 535, or paid for them, or distributed the images to anyone else, *compare United States v. Cameron*, 699 F.3d 621, 630-31 (1st Cir. 2012), or used the images in attempts to induce others to engage in sexualized conduct, *compare United States v. Brand*, 467 F.3d 179, 203 (2d Cir. 2006). Nor is there any indication that Sapiel has engaged in sexual improprieties with young children, *compare Bailey*. Such

---

[1] Offenders in the prosecutions addressed in *United States v. Cameron*, 699 F.3d 621 (1st Cir. 2012) and *State v. Bailey*, 2012 Me 55, 41 A.3d 535 were each originally identified in a similar manner, though each offender was ultimately convicted of crimes more serious than possession of child pornography.

aggravating factors, had they occurred, would rightly support higher sentences for possession of images depicting children engaging in sexually explicit conduct. Sapiel's crime has none of these aggravating factors and is, essentially, downloading to his computer and apparently viewing video depictions of young children engaged in sexually explicit conduct. For that conduct, Sapiel has accepted responsibility by entering his guilty plea.

For downloading and viewing these images, and retaining them on his computer in violation of 17-A M.R.S. § 284(1)(C), the State is recommending a sentence, by consecutive sentencing, of sixteen years to the Department of Corrections, with all but six years suspended, to be followed by twelve years' probation. The State is also recommending that Sapiel be required to register as a sex offender. Because the crime was committed prior to January 1, 2013, the sex offender registration portion of the sentence will be imposed pursuant to 34-A M.R.S. §§ 11201 – 11228 (2012). A person "who commits criminal conduct and is sentenced" in Maine on or after January 1, 2013 is subject to sex offender registration requirements stated in 34-A M.R.S. §§ 11271 – 11289 (2012).

The recommended sixteen year underlying sentence is identical to the time of actual incarceration originally imposed in *Cameron*, 699 F.3d at 635. At the Rule 11 proceeding, Sapiel agreed that the length of the underlying sentence and the length of the probationary period may be achieved by consecutive sentencing,

using a few of the counts of the indictment as primary counts to achieve the sentencing goals. *See State v. Downs*, 2009 ME 3, ¶ 14, 962 A.2d 950.

The portions of the sentence that are contested are (i) the State's recommended sentence of six years' incarceration to the Department of Corrections; (ii) the recommended sixteen year underlying sentence; and (iii) the State's request that Sapiel be required to register as a sex offender for life rather than the ten-year registration alternative.

For this sentencing proceeding, Sapiel presents as an individual who, the State represents, has two driving offenses in 2008 for which he paid fines, but no other criminal convictions and no record of any improper conduct or actions with children under the age of eighteen or other involvement with the criminal justice system.

This is the background for the sentencing to be imposed in this case. With the background established, the Court must proceed to determine the appropriate sentence, following the analytical process stated in 17-A M.R.S. § 1252-C (2012). To determine the appropriate sentence, the Court must first determine the basic term of imprisonment for the crime at issue, looking only to the nature and seriousness of the crime as committed by the defendant. The crime is a Class C crime, for such crimes, the law provides that a sentence may be imposed that includes any amount of time from no term of incarceration up to a maximum of

five years' incarceration for each offense. Additionally, because the crime involves possession of sexually explicit materials depicting children under the age of twelve, the Court, if it suspends any of the term of incarceration, may impose a period of probation of up to six years, rather than the usual two-year period of probation available for most Class C offenses. 17-A M.R.S. § 1202(1-A)(A)(3) (2012).

Because the offense may be committed in so many different ways, identifying the basic sentence for such a crime is difficult. There is no available database indicating the range of sentences that have been imposed for this crime within the State of Maine since the current prohibition on possession of sexually explicit materials was enacted in 2004, P.L. 2003, ch. 711, § B-12. The individual crimes here involve simple possession, on a computer, of the prohibited images; no purchase, sale, creation, or distribution of the images; no evidence of others viewing the images; no attempt to use the images to "groom" others for sexual activity. Thus, the nature of each individual offense is among the least serious ways that the offense may be committed, though the multiple offenses charged and the multiple images involved will be aggravating factors to be considered.

There is some data regarding sentencing for such crimes in the federal system, where prosecution for such offenses is subject to sentencing guidelines. In the federal system, the most nearly analogous crime, 18 U.S.C. § 2252A(a)(5)(B)

(2012) (possessing or accessing child pornography involving child under twelve years old with use of a computer) carries with it a guideline sentence of 41 to 51 months incarceration if the number of images is less than ten. *See United States Sentencing Guidelines* § 2G2.2(a)(1), (b)(2), (b)(6). Notably, this guideline sentence for possessing pictures is identical to the 41 to 51 months' imprisonment specified for actually engaging in sexual contact with a child under twelve years. *See* 18 U.S.C. § 2244(a)(5) (2012) (Abusive Sexual Contact) and *Sentencing Guidelines* §§ 2A3.4(a)(3), (b)(1); 5G1.1(c).[2]

In fact, scholarly reviews indicate many recent examples of sentences imposed for possession of pictures of children engaging in sexually explicit conduct that were harsher than sentences imposed for actually sexually abusing children.

> Current sentencing practices for possessors of child pornography appear quite severe when viewed in isolation. And they begin to look completely disproportionate when viewed in relation to sentences for sexual abuse of children. That is because the modern practices have resulted in some defendants who possess child pornography receiving longer sentences than defendants who sexually abuse children. One recent study of federal sentencing practices documents that a typical possessor of child pornography will receive a significantly longer sentence under the Federal Sentencing Guidelines than a defendant who engages in repeated sex with a twelve-year-old girl. It is also a

---

[2] Devining the application of the federal sentencing guidelines is not an exact science. A recent law review article indicates that possession of child pornography carries a mandatory minimum time of incarceration of five years pursuant to the federal sentencing guidelines. Carissa Byrne Hessick, *Disentangling Child Pornography from Child Sex Abuse*, 88 Wash. U. L. Rev. 853, 857 (2011).

significantly longer sentence than the one imposed in a reported case from the Eighth Circuit where an offender paid to have a mother hold down her nine-year-old child while he raped the young girl twice a week for two years.

Carissa Byrne Hessick, *Disentangling Child Pornography from Child Sex Abuse*, 88 Wash. U. L. Rev. 853, 860-61 (2011) (citing *United States v. Kane*, 470 F.3d 1277, 1281-82 (8th Cir. 2006)). *See also* Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?*, 22 Stan. L.& Pol'y Rev., 545, 565 (2011) (noting guidelines viewed by judges as often resulting "in harsher sentences for child pornography offenses (including possession and receipt) than for raping a child.").

In *United States v. Dorvee*, 616 F.3d 174 (2d Cir. 2010) the Second Circuit, after reviewing several studies of sentencing patterns, observed in a possession of sexually explicit materials case that:

> adherence to the Guidelines results in virtually no distinction between the sentences for defendants like Dorvee, and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories.

*Id.* 184. The Second Circuit further observed that application of the Guidelines in child pornography cases leads to sentencing "irrationality," *id.* 187, that can "easily generate unreasonable results." *Id.* 188.

This indicates that the federal sentencing structure is affected by an irrational sentencing dichotomy that requires possession of a picture of a sex act with a child to be punished more severely than committing a sex act with a child. No purpose would be served by presuming that the irrational dichotomy of sentencing mandates in the federal system should be transferred to the State system because there happens to be more available data about sentencing practices for possession of child pornography in the federal system.

This irrational dichotomy can exist in the federal system because the United States Supreme Court has held that "the Eighth Amendment contains no proportionality guarantee." *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991). Accordingly there is no requirement that sentences by federal courts be proportionate in relation to the harm committed or in relation to sentencing patterns for other crimes.[3]

Similarly, there is no federal constitutional requirement that state court sentences be proportionate. *See* Hessick, *Disentangling Child Pornography . . .* , 88 Wash. U. L. Rev. at 856-57 (noting that because the Supreme Court has denied proportionality review of length of sentence claims pursuant to the Eighth Amendment, states can increase penalties for possessing child pornography

---

[3] Although 18 U.S.C. § 3553(a) has been interpreted to impose a "substantive reasonableness" requirement on federal sentencing practices. *United States v. Dorvee*, 616 F.3d 174, 182-84 (2d Cir. 2010).

without violating the U.S. Constitution). The Hessick article provides several examples of irrational sentencing dichotomies that may apply comparing possession of child pornography sentences to sentences for sexual assaults on children. 88 Wash. U. L. Rev at 861-62. It cites one Arizona trial court that imposed a 200 years sentence for possession of child pornography while imposing a 22 month sentence for sexual contact with a young boy and a one-year sentence for kidnap and sexual assault of a fourteen-year-old girl. *Id.* 862.

In its opinion holding that sentencing proportionality was not mandated by the United States Constitution, the *Harmelin* Court noted that "[d]uring the 19th century several States ratified constitutions that prohibited 'cruel and unusual,' 'cruel or unusual,' or simply 'cruel' punishments *and* required *all* punishments to be proportioned to the offense," *id.*, at 982. The Court then referenced six state constitutional provisions, including the proportionality clause in the Maine Constitution. *Id.* (referencing Me. Const., art. I. § 9 (1819)); *see also State v. Ward*, 2011 ME 74, ¶ 17, 21 A.3d 1033 (noting the proportionality language in the Maine Constitution).

The Maine Constitution requires that "all penalties and punishments shall be proportioned to the offense." Me. Const. art I, § 9. Thus, unlike the federal system, the Maine Constitution imposes a proportionality requirement on sentencing. *See State v. Stanislaw*, 2013 ME 43, ¶¶ 26-29, 65 A.3d 1242. The

proportionality requirement effectively prohibits a sentencing practice under which, all other things being equal, mere possession of a picture of a prohibited act could result in a more severe sentence than commission of the prohibited act. The proportionality requirement of article I, section 9, is reflected in the Maine Criminal Code among the purposes of sentencing stated in 17-A M.R.S. § 1151(5) (2012) ("To eliminate inequalities in sentences that are unrelated to legitimate criminological goals.").

Without a broad range of representative sentencing data for comparable cases within the State, setting the basic term of imprisonment for this crime requires the Court to resort to determining the basic term of imprisonment by reviewing the sentencing factors outlined in 17-A M.R.S. § 1151.

1. To prevent crime through the deterrent effect of sentences, the rehabilitation of convicted persons, and the restraint of convicted persons when required in the interest of public safety;

2. To encourage restitution in all cases in which the victim can be compensated and other purposes of sentencing can be appropriately served;

3. To minimize correctional experiences which serve to promote further criminality;

4. To give fair warning of the nature of the sentences that may be imposed on the conviction of a crime;

5. To eliminate inequalities in sentences that are unrelated to legitimate criminological goals;

6. To encourage differentiation among offenders with a view to a just individualization of sentences;

7. To promote the development of correctional programs which elicit the cooperation of convicted persons; and

**8.** To permit sentences that do not diminish the gravity of offenses . . . .

Of particular significance here is recognition that incarceration, whether it be in State corrections facilities or county jails is expensive, costing the taxpayers approximately $3400 a month to house each prisoner. A recent survey, reporting other surveys, indicates that housing prisoners in northeastern and western states averages over $40,000 per prisoner per year. David S. Abrams, *The Imprisoner's Dilemma: A Cost-Benefit Approach to Incarceration*, 98 Iowa L. Rev. 905, 946-47 (2013). There is no reason to believe that the cost of housing prisoners in Maine is significantly different than the cost experience in other northeastern states.

We are told that State and county corrections facilities are overcrowded. Thus, we are regularly urged to minimize incarceration to reduce cost and overcrowding pressures, except for individuals who pose a threat to harm themselves or society, or have demonstrated disregard for society's rules by committing repeat offenses, or have committed violent or destructive acts, the seriousness of which would be inappropriately minimized by a sentence of little or no incarceration.

Looking at the factors identified in section 1151, in this case, Sapiel did not pay for the images. He downloaded images from a source or sources that the federal government apparently allows to continue in operation so that the receivers

of the images may be identified and prosecuted, while, apparently, the purveyors of the images, or at least the source maintained by the purveyors of the images, is allowed to continue to operate. Because Sapiel did not pay for the images, he in no way aided or promoted the purveyors and creators of those images. He himself did not create the images, and he viewed and kept them only on his computer. He did not transmit them to anyone else. As such, he committed no harm that would appear to require incarceration to protect himself or society from further crimes while incurring the great cost that incarceration imposes on society and would impose on Sapiel's family.

The basic sentence, of course, cannot consider an individual's particular circumstances, those factors are to be considered at later stages of the sentencing process. But in setting a number for the basic sentence, it is necessary to consider the factors listed in 17-A M.R.S. § 1151. With those factors considered, the Court determines that the appropriate basic sentence, before consideration of aggravating and mitigating factors, for the crime of possession of sexually explicit materials (Class C) would be a sentence of ninety days' incarceration. To put this number in context, experience indicates that this basic sentence is higher than sentences usually imposed for first offenses of simple assault, a crime of violence; furnishing liquor to minors, a crime harmful to children; operating under the influence, a crime dangerous to others; or criminal mischief, a crime of damaging property.

With the basic sentence indicated, the Court then must proceed to consider aggravating and mitigating factors and the particular circumstances of the offender. Considering mitigating factors, Sapiel has accepted responsibility for his actions. Further, there is no indication that Sapiel has committed any crimes other than the motor vehicle offenses noted above or that he has otherwise engaged in inappropriate acts with children or been involved with creating, purveying, or benefiting from images of sex acts with children or child pornography.

For aggravating factors, there is the fact that Sapiel downloaded and possessed many images, though the method for calculating the number of images when videos are included is imprecise. While the number of images downloaded may not be unusual for persons engaged in searches for and downloading of child pornography on the internet, it is certainly more than possession of a single or a few images transmitted to or from a cellphone in a moment of bad judgment. Thus, the large number of images is an aggravating factor to consider in determining the ultimate sentence.

Another aggravating factor is that Sapiel appears to have personality issues that cause, or caused, him to seek to view these images on a more than occasional basis before this crime was discovered and he began counseling for his issues. This factor indicates a need for a sentence significant enough to give Sapiel considerable incentive to continue his counseling and treatment and to avoid repeat

of the problems that brought him before the court today. Considering the large number of images at issue, the State's recommended sixteen-year sentence is not inappropriate.

The reports from Mr. Sapiel's treatment providers indicate that he needs a long period of treatment and rehabilitation, and incentives to comply with his treatment program, his conditions of probation, and his obligations to society to avoid the problems that landed him here today. The sixteen-year sentence can provide those incentives, as Mr. Sapiel will know that any failures to follow treatment and probation obligations, any repeats of the acts that brought us here today, or any new criminal conduct will almost certainly result in his serving some or all of the sixteen-year sentence, plus, perhaps additional time if new crimes are proven. Thus, the sixteen-year underlying sentence is accepted as the beginning point for analysis.

With the underlying sentence established, the Court must consider what portion of that underlying sentence should be suspended considering the various aggravating and mitigating factors in the case and the sentencing criteria addressed in 17-A M.R.S. § 1151. Serving the full term of the six-year recommended cap would cost the State approximately $240,000 based on the studies cited above. That sentence and its resulting cost would be imposed without reservation if Mr. Sapiel had a prior record of similar offenses, or of multiple acts of sexual abuse of

children, or of violent felonies. That sentence would be seriously considered if, looking to the future, it appeared that Mr. Sapiel posed a significant risk of reoffending, or abusing children, or harming others while living in the community on probation supervision.

But Mr. Sapiel has no such prior record, and he poses no such risk. Except for the motor vehicle offenses, he presents, essentially, as a first offender. He has no history of abusing or presenting a risk to children, no history of violence, no history, except for this case, of repeated disregard for the law or the rules for living in decent society. He paid no money for the pictures he downloaded, providing no incentive or reward to the creators or the purveyors who victimized children to create child pornography. He simply downloaded what was available to him from purveyors of this material who the federal government monitored to support prosecution of others like Sapiel. When Sapiel received these pictures he did not show or transmit them to others, he kept them on his computer solely for his own viewing. With all of those factors considered, the Court determines that a time of incarceration of one year should be imposed.

That one year's incarceration emphasizes the seriousness of the conduct in which Mr. Sapiel engaged. It also recognizes that the limited threat to the safety and well being of the community caused by Mr. Sapiel's crimes does not justify a longer period of incarceration if our constitutional obligation of sentencing

proportionate to the relative harm caused by the crime is to be achieved and if we are to avoid costs that would otherwise be imposed on the community by unnecessarily lengthy incarceration.

The sixteen years' potential incarceration hanging over Mr. Sapiel's head, along with the twelve years during which he will be under State supervision on probation after his release, provides significant protection to the community and sufficient deterrence to Mr. Sapiel from committing any further crimes or failing to comply with his treatment obligations or other terms of his probation.

Accordingly, the overall sentence that will be imposed in this matter will be sixteen years to the Department of Corrections, with all but one year suspended, to be followed by a period of twelve years of probation. The conditions of probation shall include the standard conditions of probation plus the following special conditions:

No contact with his daughter except when another adult is present in the area where the contact occurs and as approved by his probation officer as in accordance with his treatment plan.

No contact with any other child under the age of 16 of family or friends except when another adult is present in the area where the contact occurs.

No contact with any unrelated child under the age of 16, except as allowed in paragraphs # 1 and # 2 above.

"Contact" for the purposes of these probation conditions includes in person contact, contact by mail and by telephone or smartphone, and contact through electronic media including the internet, email, and social media.

Continue in treatment, to the satisfaction of his probation officer, for the issues and conditions indicated in the attachment to the sentencing memo submitted by the defense.

No access to the internet or social media sites except through computers and/or smartphones identified to and approved by his probation officer. On computers and smartphones approved for use, the log or history of websites accessed shall be operational and shall not have website access logs deleted except with approval of a probation officer after an inspection by the probation office. Any indicated deletion of items from the website log or history shall be considered a violation of these probation conditions.

No possession, viewing, accessing, or downloading of any pictures, videos or other depictions of persons who are or who appear to be under the age of 18 displaying their genitals or engaging in any sexual activity or sexual contact.

Defendant to accept random, unannounced searches of his home, and any computers, cell-phones or smartphones, and motor vehicles, trailers, campers or boats to which he has or has had access for purpose of determining if any of the terms and conditions of his probation have been violated.

The parties have agreed that the Court may use consecutive sentencing to achieve the sentence in this case. Therefore, for these separate and serious crimes, the underlying sentence will be achieved by imposing consecutive sentences as follows.

On Count 3, a sentence of two years' incarceration with all but one year suspended to be followed by a period of probation of two years with the conditions as indicated.

On Count 4, a sentence of two years, consecutive to the sentence imposed on Count 3, all suspended, to be followed by a period of probation of two years with conditions as indicated.

On Count 5, a sentence of two years, consecutive to the sentence imposed on Count 4, all suspended, to be followed by a period of probation of two years, with conditions as indicated.

On Count 6, a sentence of two years, consecutive to the sentence imposed on Count 5, all suspended, to be followed by a period of probation of two years with conditions as indicated.

On Count 7, a sentence of three years, consecutive to the sentence imposed on Count 6, all suspended, to be followed by a period of probation of two years with conditions as indicated.

On Counts 8, 9, 10, 11, 14, 15, 16, 17, 18, 19, 20, 21, 22, and 23, concurrent sentences of five years, each consecutive to the sentence imposed on Count 7, all suspended, to be followed by a period of probation of two years with conditions as indicated.

This sentencing is intended to achieve an overall sentence of 16 years to the Department of Corrections, with all but one year suspended, followed by a period of probation of 12 years, with the standard conditions of probation and the additional conditions indicated in this order. The sentencing order is structured so that, near the end of the probationary period, a substantial amount of time remains to be served if any of the probation conditions are violated.

As part of this sentence, Sapiel is ordered to register a sex offender for a period of ten years. In its discretion, the Court declines to increase the ten year registration mandate to a lifetime registration mandate as is possible pursuant to 34-A M.R.S. § 11203(8)(B)(2).

Because the underlying sentence is for a term of more than one year, Mr. Sapiel has the right to appeal the sentence if he wishes. Any appeal must be filed within twenty-one days of the docketing of this sentencing order.

The Clerk is authorized to incorporate this order by reference into the docket.

DATED: October 23, 2013

/S/
_____
Donald G. Alexander
Justice, Superior Court