MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2020 ME 127
Docket:      Pen-20-47
Argued:      September 17, 2020
Decided:     October 29, 2020

Panel:       MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.

STATE OF MAINE

v.

STEPHEN A. TREADWAY

GORMAN, J.

[¶1]  Stephen A. Treadway appeals from a judgment of conviction of aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2020); domestic violence criminal threatening (Class C), 17-A M.R.S. § 209-A(1)(B)(1) (2020); tampering with a victim (Class B), 17-A M.R.S. § 454(1-B)(A)(2) (2020); violation of a protective order (Class D), 19-A M.R.S. § 4011(1) (2020); and two counts of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1) (2020), entered in the trial court (Penobscot County, *Anderson, J.*) after a jury-waived trial.  Treadway argues that the trial court erred when it admitted expert testimony regarding strangulation because the testimony was overly confusing. He further argues that the court erred by imposing consecutive sentences on the convictions for aggravated assault and domestic violence assault and by

2

considering his criminal history as an aggravating factor when one of his prior convictions had already resulted in an enhancement of the classification of the charge of domestic violence assault. We affirm the judgment and the sentence.

## I. BACKGROUND

A.   Factual and Procedural History

[¶2]  In explaining its verdict after trial, the court made the following findings of fact, which are supported by competent record evidence from the trial. *See State v. Conroy,* 2020 ME 22, ¶ 2, 225 A.3d 1011. At the time of the events in question, the victim and Treadway were living together in Bangor with their infant twins. On October 24, 2018, the victim and Treadway got into an argument concerning a visit from the victim's relatives. At some point during the argument, Treadway assaulted the victim by putting his hand around her neck, which caused her to have difficulty breathing and impaired her vision. This assault also left the victim with neck and throat pain for a few days after the incident.

[¶3] On October 27, 2018, in the course of another argument, after telling the victim that he "own[ed her] and agreeing with [him] is what love is all about," Treadway again put his hand around the victim's neck and applied more pressure than he had just days earlier. This time Treadway's actions caused the

victim to slip toward unconsciousness.  Treadway then threw the victim by the arm into the closet and told her that "there was no piece of paper that could protect her and some day she would set him off and he could kill her."  The court found that, during both incidents, the victim was holding one of their infants.

[¶4]  Treadway was arrested and, from jail, sent letters to a minister asking that he read the letters to the victim.  The letters were an attempt by Treadway to convince the victim not to testify at trial.  At the time Treadway sent the letters, he knew that the victim had a protection order against him.

[¶5]  In two separate indictments, Treadway was charged with a total of seven counts:[1] aggravated assault (Class B), 17-A M.R.S. § 208(1)(C); domestic violence criminal threatening (Class C), 17-A M.R.S. § 209-A(1)(B)(1); tampering with a victim (Class B), 17-A M.R.S. § 454(1-B)(A)(2); violation of a condition of release (Class C), 15 M.R.S. § 1092(1)(B) (2020); violation of a protective order (Class D), 19-A M.R.S. § 4011(1); and two counts of domestic violence assault (Class C), 17-A M.R.S. § 207-A(1)(B)(1).  He entered pleas of

---

[1]  The aggravated assault, domestic violence assault, and domestic violence criminal threatening counts were charged in docket number PENCD-CR-2018-04154; the tampering, violation of a condition of release, and violation of a protective order counts were charged in docket number PENCD-CR-2018-04695.  The indictments were consolidated for trial with the apparent agreement of the parties.  *See* M.R.U. Crim. P. 8(a), (c).  This appeal involves only the charges for aggravated assault and domestic violence assault.

4

not guilty to all charges and waived his right to a jury trial. *See* M.R.U. Crim. P. 23(a).

[¶6] In June of 2019, the court conducted a jury-waived trial. Both Treadway and the victim testified. The State also introduced the testimony of a qualified expert—a forensic nurse and educator—to explain strangulation from a medical perspective. The expert testified about the medical distinction between strangulation and choking, and she described the physiological effects of strangulation, including the effects that a loss of oxygen to the brain may cause. She also described the external signs of strangulation that could be seen during a physical examination, including the prevalence and duration of bruising and petechiae. Treadway objected throughout the testimony. His objections fell into three general categories: (1) that the expert did not adequately distinguish between the legal and medical definitions of strangulation, (2) that testimony about the external signs typically associated with strangulation would not be helpful to the court because the expert had not personally examined the victim, and (3) that the expert was not qualified to testify about the prevalence of particular external signs of strangulation. The court overruled Treadway's objections, noting that the State was permitted to present evidence "on the topic in a general way," and that the court's obligation

was to analyze whether and how the testimony had any relationship to the charges against Treadway.

[¶7] After hearing from all of the witnesses and considering the parties' closing arguments, the court found Treadway not guilty on the count of violation of condition of release but guilty on the other six counts.

B.    Sentencing

[¶8]  At the sentencing hearing, the court stated that because the October 24 Class C domestic violence assault, the October 27 Class B aggravated assault, and the Class B witness tampering offense constituted "separate criminal episodes" for sentencing purposes, it would impose consecutive sentences.   The court then set the basic sentence at three years for the aggravated assault charge and two years for the charge of domestic violence assault.   After considering the aggravating and mitigating circumstances, including Treadway's criminal record "and the impact on [the victim]," the court imposed three consecutive sentences: five years in prison on the Class B aggravated assault; three years in prison on the Class C domestic violence assault; and three years, all suspended, with three years of probation, on the Class B witness tampering conviction.[2]

---

   [2]  The court imposed concurrent sentences on the other three counts: three years each for the October 27 Class C domestic violence assault and Class C domestic violence criminal threatening, and

[¶9]  Treadway timely appealed the judgment.  *See* 15 M.R.S. § 2115 (2020); M.R. App. P. 2B(b)(1).  He also sought and obtained leave to appeal portions of his sentence from the Sentence Review Panel.  *See* 15 M.R.S. § 2151 (2020); M.R. App. P. 20; *State v. Treadway*, No. SRP-20-46 (Me. Sent. Rev. Panel Mar. 17, 2020).

## II.  DISCUSSION

### A.    Expert Testimony

[¶10]  Treadway contends that the court erred in admitting the expert testimony regarding strangulation because the testimony was overly confusing and therefore did not satisfy the requirement that expert testimony be helpful. *See* M.R. Evid. 702.

[¶11]   We review Treadway's argument regarding the distinction between legal and medical strangulation for an abuse of discretion, and review his remaining arguments for obvious error because he did not raise them at trial.  *State v. Rourke*, 2017 ME 10, ¶ 10, 154 A.3d 127; *see also State v. Thompson*, 1997 ME 109, ¶ 14, 695 A.2d 1174.  "To be admissible, expert testimony must (1) meet a threshold level of reliability, (2) be relevant

---

nine months on the Class D violation of a protective order.  Treadway does not challenge these sentences, nor the suspended sentence on the witness tampering conviction.

pursuant to M.R. Evid. 401, and (3) assist the trier of fact in understanding the evidence or determining a fact in issue." *Bergin v. Bergin*, 2019 ME 133, ¶ 9, 214 A.3d 1071 (quotation marks omitted); *see* M.R. Evid. 702. Treadway argues that the expert's testimony did not satisfy the third criterion because the testimony was irredeemably confusing.

[¶12] Treadway's arguments are unpersuasive. As we explained in *State v. Perry*, expert testimony about "the physiological effects of and symptoms associated with strangulation" could assist the trier of fact in "determining a fact in issue." 2017 ME 74, ¶ 20, 159 A.3d 840 (quoting M.R. Evid. 702). Here, as in *Perry*, the fact-finder had to determine whether the State had proved that Treadway's conduct constituted "strangulation" as defined in 17-A M.R.S. § 208(1)(C). The expert's testimony was directly relevant and helpful on that question.[3] Accordingly, we conclude that the court did not abuse its discretion or commit obvious error by admitting the expert's testimony.

---

[3] Treadway recognizes the obstacle that *Perry* presents and attempts to sidestep it by arguing that the expert testimony in this case was inconsistent or confusing. Although it is possible to excerpt isolated exchanges in the record that, scrubbed of their context, might be less than perfectly clear, the totality of the expert's testimony reflects a coherent, concise, and accessible explanation of the basic anatomy and physiology involved in strangulation, as well as the physical signs found after strangulation has occurred.

8

B.     Consecutive Sentences

[¶13]  In Treadway's sentence appeal, he argues that the court erred by imposing consecutive sentences pursuant to 17-A M.R.S. § 1256 (2018)[4] on the counts of aggravated assault and domestic violence assault because the two assaults were part of the same criminal episode.  "We review a sentencing court's imposition of consecutive sentences for an abuse of discretion," *Perry*, 2017 ME 74, ¶ 22, 159 A.3d 840 (quotation marks omitted), but review a "court's determination as to the presence of [one of the factors listed in 17-A M.R.S. § 1256(2)] for clear error," *State v. Ilsley*, 604 A.2d 17, 19 (Me. 1992) (quotation marks omitted); *see State v. Hofland*, 2012 ME 129, ¶ 27, 58 A.3d 1023.

[¶14]  Generally, "a court must impose [multiple] sentences concurrently unless it finds a statutory basis for imposing the sentences consecutively." *Perry*, 2017 ME 74, ¶ 22, 159 A.3d 840 (quotation marks omitted).  One such statutory basis, and the one on which the court here relied,[5] is that "the

---

[4]  In 2019, Maine's sentencing statutes were repealed and replaced.  *See* P.L. 2019, ch. 113 (emergency, effective May 16, 2019).  Title 17-A M.R.S. § 1256 (2018) was in effect at the time of Treadway's crimes; its replacement, 17-A M.R.S. § 1608 (2020), had taken effect by the time he was convicted and sentenced.  The court cited section 1608 at the sentencing hearing.  There is no difference between the statutes that affects the trial court's sentences or this appeal.

[5]  Treadway suggests that the court based its decision to impose consecutive sentences at least in part on 17-A M.R.S § 1256(2)(D).  He argues that in doing so, the court erred because it may impose a consecutive sentence pursuant to subsection (2)(D) only when "[t]he seriousness of the criminal

convictions are for offenses . . . arising from different criminal episodes." 17-A M.R.S. § 1256(2)(A).

[¶15]  The court's finding that the two assaults arose from different criminal episodes is supported by the record, including the victim's testimony that, during the two days in between the assaults, Treadway acted "just normal . . . , like nothing had been going on," that the assaults took place in different locations in the apartment, that the force of the second assault was "worse" than the first, and that Treadway made different and more severe verbal threats during the second assault.

[¶16]  Based on the clear evidence that Treadway's assaults on the victim on October 24 and 27 were separate and distinct, the court did not err in finding that the offenses arose from different criminal episodes and did not abuse its discretion in imposing consecutive sentences. *See Perry,* 2017 ME 74, ¶ 22, 159 A.3d 840; *see also Ilsley,* 604 A.2d at 19.

---

conduct involved . . . require[s] a sentence of imprisonment in excess of the maximum available for the most serious offense."  Although the court did make a passing reference to subsection (2)(D), the court's determination that consecutive sentences were warranted was clearly based on its finding that the assault committed on October 27 and the assault committed on October 24 were not part of the same criminal episode, as that term is used in subsection (2)(A).

## C. Criminal History

[¶17] Treadway also challenges the manner in which his criminal history affected his sentence. His primary contention is that, as a matter of statutory interpretation, a court may not use a defendant's criminal history as an aggravating factor at sentencing if a prior conviction has also been used to enhance the classification of an offense.[6] "We review questions of statutory interpretation de novo," looking "first to the plain meaning in order to discern legislative intent, viewing the relevant provision[s] in the context of the entire statutory scheme to generate a harmonious result." *State v. Tozier*, 2015 ME 57, ¶ 6, 115 A.3d 1240 (quotation marks omitted).

[¶18] Title 17-A M.R.S. § 207-A provides that domestic violence assault is generally a Class D crime but becomes a Class C crime if the defendant "[h]as one or more prior convictions for" certain domestic violence crimes. *See also* 17-A M.R.S. § 9-A (2020) (listing certain requirements for a prior conviction to be used to enhance a sentence, such as that the prior conviction be "specifically alleged" and that the prior conviction "precede[] the commission of the offense being enhanced by no more than ten years"). Treadway acknowledges, as he

---

[6] Treadway offers several related arguments that are predicated on misunderstandings of the court's sentencing analysis. We do not find these arguments persuasive.

must, that his criminal record includes the conviction that allowed the State to charge him with Class C domestic violence assault, and does not assert that the State failed to prove this element of the offense.

[¶19]  Treadway also acknowledges that, in determining the "maximum period of imprisonment to be imposed" for a crime, a sentencing court must "consider[] all other relevant sentencing factors, both aggravating and mitigating, appropriate to th[e] case," including "the offender's criminal history."  17-A M.R.S. § 1252-C (2018).[7]  Treadway's criminal history began in 1999, when he was eighteen years old, and included many, many convictions, including no fewer than five convictions for assault in addition to the 2014 conviction cited in the indictment.  Nonetheless, Treadway asserts that where a crime is "used" to enhance the sentencing classification of a charge, that crime cannot be considered by a sentencing court in determining a sentence for the enhanced offense.[8]  He cites no case or statute to support his argument, asserting instead that there is some "ambiguous interplay" between 17-A M.R.S.

---

[7]  Title 17-A M.R.S. § 1252-C (2018) has since been repealed and replaced by 17-A M.R.S. § 1602 (2020), *see* P.L. 2019, ch. 113.

[8]  In imposing its sentence, the court cited Treadway's "criminal record, which is incredibly extensive."  Given the extent of Treadway's record, it would be impossible for us to determine what weight, if any, the court placed on the single conviction cited in the indictment.

§ 207-A(1)(B) and 17-A M.R.S. § 1252-C. Relying on this claim of ambiguity, Treadway seeks refuge in the rule of lenity.

[¶20] Treadway does not explain—and it is not readily apparent—how these statutes are ambiguous, either on their own or in conjunction. There is no textual overlap or inconsistency between the statutes, nor any apparent conflict between their distinct purposes. A prior conviction that enhances a crime's classification, as in section 207-A(1)(B), is "an essential element of the offense charged"—i.e., part of the crime itself. *State v. Corliss*, 1998 ME 36, ¶ 6, 706 A.2d 593. The consideration of a defendant's criminal history at sentencing, by contrast, allows a court to "craft" a sentence that is "individualized to the offender and the offender's crimes." *State v. Downs*, 2009 ME 3, ¶ 24, 962 A.2d 950; *cf. State v. Lord*, 2019 ME 82, ¶¶ 35-36, 208 A.3d 781 (holding that a sentencing court did not err by considering, at step one of the sentencing analysis, that the defendant's conduct violated his probation— which arose from his criminal history—and then, at step two, considering his "significant criminal history" as an aggravating factor because the court considered these facts in "distinct" ways). In other words, the use of a prior conviction to elevate the sentencing class of a crime changes the range of permissible sentences, whereas the use of the prior conviction as an

aggravating factor at sentencing affects where within that expanded range the final sentence falls.

[¶21] Moreover, a defendant whose prior conviction results in an enhanced classification necessarily has a criminal history. It would be nonsensical for the Legislature to include "criminal history" as a potential aggravating factor, without addressing the predictable and considerable overlap between the statutes, if it did not intend their concurrent applicability.

[¶22] Although all prior convictions for domestic violence criminal threatening, domestic violence stalking, domestic violence terrorizing, and domestic violence assault will serve to enhance a subsequent domestic violence assault charge to a Class C crime, *see* 17-A M.R.S. § 207-A(B)(1), a sentencing court could reasonably view those prior convictions quite differently for purposes of the second step of the sentencing analysis, *see* 17-A M.R.S. § 1602(1)(B). For example, a court's analysis of the aggravating effect of a prior conviction for domestic violence assault that involves actual physical injury is likely to be quite distinct from its analysis of the aggravating effect of another conviction involving only offensive—but not injurious—physical contact.

[¶23] We conclude that the court did not err by considering Treadway's criminal history as an aggravating factor at sentencing even though one of his

prior convictions was used to enhance the classification of the charge of domestic violence assault.[9]

The entry is:

Judgment and sentences affirmed.

Jeffrey M. Silverstein, Esq. (orally), Silverstein-Law, PA, Bangor, for appellant Stephen A. Treadway

Marianne Lynch, District Attorney, and Mark A. Rucci, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket numbers CR-2018-4154 and CR-2018-4695
FOR CLERK REFERENCE ONLY

[9]   An enhancement of classification that imposes a mandatory minimum could be more problematic, but that is not the situation presented to us in this case. *See* 17-A M.R.S. § 1604(3) (2020).